USDC SCAN INDEX SHEET

















SMV   3/20/06   11:53

3:05-CV-01697   TOWNSEND V. KELLER WILLIAMS

*48*

*O.*

1

2

3

4

5

6

7

FILED

'06 MAR 20 AM 10: 14

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_____                        DEPUTY

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  DAN TOWNSEND; BLT HOLDINGS I,        )   Civil No. 05cv1697-L(JMA)
    INC., BLT HOLDINGS, II, INC.,        )
12                                       )
                    Plaintiffs,          )   **ORDER:  (1) GRANTING IN PART**
13                                       )   **AND DENYING IN PART MOTIONS**
    v.                                   )   **TO DISMISS; (2)COMPELLING**
14                                       )   **ARBITRATION; and (3) STAYING**
    KELLER WILLIAMS REALTY, INC.,* *et*  )   **ACTION**
15  *al.*,                               )
                                         )
16                  Defendants.          )   [Dock. Nos 29, 37]
                                         )
17  _____     )

18      This matter comes before the Court on:  (1) Defendant Keller Williams Realty, Inc.'s

19  Motion to Dismiss, or in the Alternative, Stay Action and Compel Arbitration or Transfer

20  Venue; and (2) Defendant Tom Colwell's Motion to Dismiss.  The Court finds the motions

21  *suitable for determination on the papers and without oral argument in accordance with Civil*

22  *Local Rule 7.1(d)(1).*

23                              **BACKGROUND**

24      Defendant Keller Williams Realty, Inc. ("KWRI") is an international real estate company

25  that licenses its offices in the United States and Canada.  KWRI is a Texas corporation with its

26  principal place of business in Austin, Texas.[1]  On July 15, 1998, Plaintiff Dan Townsend, by and

27

28  _____

    [1] First Amended Complaint ("FAC") ¶ 14.

                                48

                                                                   05cv1697

1  through Benefit Asset Management Corp. (later renamed BLT I), entered into a license

2  agreement with KWRI to operate a real estate Market Center in Rancho Bernardo, California.[2]

3  On June 11, 1999, Townsend by and through BLT II entered into a license agreement with

4  KWRI to operate a real estate Market Center in Mission Valley.[3]  During the years 1998 through

5  2001, Defendant Tom Colwell, a Colorado citizen, held himself out as KWRI's regional director

6  for the San Diego area.[4]  Colwell was responsible for approving Townsend's Market Centers'

7  initial budgets and core start up personnel, including the operating principal and team leaders,

8  and was responsible for providing advice and training to the Rancho Bernardo and Mission

9  Valley Market Centers.[5]

10       The license agreements contain an arbitration clause requiring the parties to submit to

11  arbitration any disputes arising out of or relating to the licensee's operation of the Market

12  Center.[6]  According to Plaintiffs, as a result of Defendants' wrongful actions, Townsend was

13  forced to sell his Rancho Bernardo Market Center on August 30, 2001.[7]  As a further direct

14  result of Defendants' wrongful and unfair business practices, on June 27, 2003, Townsend

15  defaulted out of his Mission Valley Market Center.[8]

16       On August 29, 2005, Townsend, BLT I, and BLT II filed this action against KWRI,

17  Colwell, and Colwell's limited liability company KW California, LLC.  On November 14, 2005,

18  Plaintiff filed an amended complaint no longer naming KW California as a Defendant and

19  alleging:  (1) breach of contract against KWRI; (2) unfair business practices under California

20  Business & Professions Code section 17200 against KWRI and Colwell; (3) intentional

21

22       [2] *Id.* ¶ 16, Ex. A.

23       [3] FAC ¶ 17., Ex. B.

24       [4] FAC ¶¶ 15, 20.

25       [5] *Id.* ¶ 20.

26       [6] FAC Ex. A ¶ 20.02(c); FAC Ex. B ¶ 20.02(c).

27       [7] FAC ¶¶ 27-33, 36-38.

28       [8] FAC ¶ 39.

05cv1697

1    interference with prospective business advantage against KWRI and Colwell; (4) unjust

2    enrichment against KWRI; and (5) requests an accounting as to KWRI.

3         Under the terms of the license agreements, KWRI filed a Demand for Arbitration with the

4    American Arbitration Association ("AAA") in Dallas, Texas on December 2, 2005.[9]  KWRI

5    requests:  (1) a declaratory judgment that KWRI fully complied with the license agreements;

6    (2) damages for Plaintiffs' breaches of the license agreements; and (3) attorneys' fees and

7    costs.[10]

8         In this action, KWRI and Colwell filed separate motions challenging the amended

9    complaint.  Both motions request dismissal for lack of subject matter jurisdiction.  KWRI

10   alternatively moves to stay this action and compel arbitration or, in the alternative, dismiss or

11   transfer this action for lack of venue.  Colwell, in turn, moves to dismiss for failure to state a

12   claim, challenges BLT I and BLT II's capacity to sue, and argues the case should be stayed

13   should the Court compel arbitration of Plaintiffs' claims against KWRI.  In the alternative,

14   Colwell moves for a more definite statement.

15                                        **DISCUSSION**

16   **I.    Motions to Dismiss for Lack of Subject Matter Jurisdiction**

17        The federal court is one of limited jurisdiction.  *See Gould v. Mutual Life Ins. Co. of New*

18   *York*, 790 F.2d 769, 774 (9th Cir. 1986).  As such, it cannot reach the merits of any dispute until

19   it confirms its own subject matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S.

20   83, 94 (1998).  "'Jurisdiction is power to declare the law, and when it ceases to exist, the only

21   function remaining to the court is that of announcing the fact and dismissing the cause.'"  *Id.*

22   (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 614 (1868)).

23        Jurisdiction in this case is founded on diversity.[11]  "District courts have jurisdiction in

24   civil actions where there is complete diversity of citizenship among the parties and the amount in

25

26        [9]  Coldwell Decl. ¶ 2, Ex. A.

27        [10]  Coldwell Decl. Ex. A.

28        [11]  FAC ¶¶ 1-9.

                                            3                                    05cv1697

1   controversy exceeds $75,000, exclusive of interest and costs." *Crum v. Circus Circus Enters.*,

2   231 F.3d 1129, 1131 (9th Cir. 2000). The amount in controversy requirement is determined

3   from the allegations or prayer of the complaint. *Id.* The amount claimed by the plaintiff is

4   controlling, provided the claim is made in good faith. *Id.* To justify dismissal, "[i]t must appear

5   to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul*

6   *Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *accord Crum*, 231 F.3d at 1131.

7   "Legal impossibility" differs from the standard set by Federal Rule of Civil Procedure 12(b): "A

8   legal shortcoming does not equate to a jurisdictional shortfall, else defendants would never *win*

9   in diversity cases. They could at best achieve jurisdictional dismissals, followed by new suits in

10  state court." *Johnson v. Wattenbarger*, 361 F.3d 991, 993-94 (7th Cir. 2004) (internal citations

11  omitted). A demand is legally impossible when "it runs up against a statutory or contractual cap

12  on damages, or when the theories of damages employ double counting." *Id.* at 994 (internal

13  citations omitted).

14      **A.   Colwell's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

15          The FAC alleges the amount in controversy exceeds $75,000, and that Townsend paid

16  Defendants $37,000 in franchise fees and $175,000 in royalty fees.[12] The FAC also seeks

17  damages for breach of the license agreements and as a result of Defendants' intentional

18  interference with prospective business advantage. Colwell maintains these allegations are

19  insufficient and conclusory, and therefore diversity jurisdiction is lacking. According to

20  Colwell, Plaintiffs fail to properly allege an amount in controversy because Plaintiffs have not

21  asserted any claim that would entitle them to a refund of the franchise and royalty fees. Colwell

22  further argues the FAC's allegations for damages in an unspecified amount do not meet the

23  $75,000 minimum amount in controversy requirement.

24          Having reviewed the FAC, the Court finds its allegations sufficient to support diversity

25  jurisdiction. The FAC seeks restitution of the royalty and franchise fees as ill-gotten gains under

26

27

28      [12] FAC ¶¶ 7-9.

1  California Business & Professions Code section 17200.[13]  The FAC does, therefore, allege a

2  basis for recovery of the more than $200,000 paid to Defendants.  Although Colwell maintains

3  Plaintiffs' § 17200 claim must be dismissed, the merits of that claim are irrelevant in

4  determining the existence of diversity jurisdiction.  *See Johnson*, 361 F.3d at 994 ("Thus,

5  '[s]ubject matter jurisdiction is not defeated by the possibility that the complaint ultimately fails

6  to state a claim.'") (quoting *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002)).  The

7  Court does not find it legally impossible for Plaintiffs to have suffered more than $75,000 in

8  damages.  Accordingly, Colwell's motion to dismiss for lack of subject matter jurisdiction is

9  **DENIED**.

10       **B.     KWRI's Motion to Dismiss for Lack of Subject Matter Jurisdiction**

11       KWRI argues that because the parties agreed to arbitration in the license agreements, this

12  Court lacks subject matter jurisdiction over this case.  The Court disagrees.  "[A]rbitration

13  agreements do not divest courts of jurisdiction, though they prevent courts from resolving the

14  merits of arbitrable disputes."  *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 77 (1st Cir.

15  2000); *see Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2002) (holding that

16  an arbitration clause does not divest the court of jurisdiction).  Accordingly, the existence of an

17  arbitration clause does not deprive this Court of jurisdiction over the case.

18  **II.     KWRI's Motion to Compel Arbitration**

19       The Federal Arbitration Act ("FAA") empowers federal courts to stay actions subject to

20  an arbitration agreement and to order a refusing party to abide by the procedures in the

21  agreement.  9 U.S.C. § 3; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991).

22  The language of the FAA is mandatory:

23       If any suit or proceeding be brought in any of the courts of the United States upon
         any issue referable to arbitration under an agreement in writing for such
24       arbitration, the court in which such suit is pending, upon being satisfied that the
         issue involved in such suit or proceeding is referable to arbitration under such an
25       agreement, shall on application of one of the parties stay the trial of the action until
         such arbitration has been had in accordance with the terms of the agreement,
26       providing the applicant for the stay is not in default in proceeding with such
         arbitration.

27

28       [13]  FAC ¶ 60, at 14.

                                          5                                         05cv1697

1   9 U.S.C. § 3; *Bosinger v. Phillips Plastics Corp.*, 57 F. Supp. 2d 986, 989 (S.D. Cal. 1999).

2          "The standard for demonstrating arbitrability is not high." *Simula, Inc. v. Autoliv, Inc.*,

3   175 F.3d 716, 719 (9th Cir. 1999). "The Supreme Court has held that the FAA leaves no place

4   for the exercise of discretion by a district court, but instead mandates that district courts direct

5   the parties to proceed to arbitration on issues as to which an arbitration agreement has been

6   signed." *Id.* (citing *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985)). Thus, the court's

7   role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does,

8   (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic*

9   *Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

10          The license agreements concerning the Rancho Bernardo and Mission Valley Market

11   Centers contain the following arbitration clause:

12          (a)     Except as provided in this agreement, licensor and licensee agree that any
        claim, controversy or dispute arising out of or relating to licensee's operation of
13      the market center under this agreement (and exhibits) including, but no limited to,
        those occurring subsequent to the termination or expiration of this agreement, that
14      cannot be amicably settled among the parties or through mediation shall, except as
        specifically set forth herein and in section 20.02(c), be referred to arbitration in
15      accordance with the rules of arbitration of the American Arbitration Association,
        as amended. If such rules are in any way contrary to or in conflict with this
16      agreement, the terms of this agreement shall control. Only claims, controversies or
        disputes involving licensee and no claims for or on behalf of any other licensee or
17      supplier may be brought by licensee hereunder.[14]

18          The license agreements require arbitration to take place at KWRI's corporate offices in

19   Austin, Texas.[15] These agreements also provide that all disputes will be governed by Texas

20   law.[16]

21          KWRI contends all of the claims Plaintiffs have asserted against it fall within the scope of

22   the arbitration clause in the license agreements, and further argues the arbitration should take

23   place in Austin, Texas and be governed by Texas law. Plaintiffs do not dispute the claims are

24

25          [14] FAC Ex. A ¶ 20.02(a); FAC Ex. B ¶ 20.02(a).

26          [15] FAC Ex. A ¶ 20.02(b); FAC Ex. B ¶ 20.02(b). For those claims that are not arbitrable
    as set forth in the license agreements, suit is to be brought in the state courts of Travis County,
27   Texas and the federal District Court for the Western District of Texas, Austin Division. (FAC
    Ex. A ¶ 20.02(f); FAC Ex. B ¶ 20.02(f).)

28          [16] FAC Ex. A ¶ 20.02(f); FAC Ex. B ¶ 20.02(f).

1    arbitrable.  However, Plaintiffs maintain this Court should require the arbitration to take place in

2    San Diego under California law.

3         "'[A]rbitration is a matter of contract and a party cannot be required to submit to

4    arbitration any dispute which he has not agreed so to submit.'"  *Howsam v. Dean Witter*

5    *Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *United Steelworkers v. Warrior & Gulf*

6    *Navigation Co.*, 363 U.S. 574, 582 (1960)).  Thus, while the Supreme Court has "long

7    recognized and enforced a liberal federal policy favoring arbitration agreements, it has made

8    clear that there is an exception to this policy:" "questions of arbitrability," such whether the

9    parties agreed to arbitrate a dispute and are bound by an arbitration clause, must be decided by

10   the court.  *Howsam*, 537 U.S. at 83 (internal quotations and citations omitted); *Green Tree Fin.*

11   *Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

12   938 (1995).   In contrast, "procedural questions which grow out of the [parties'] dispute and bear

13   on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide."

14   *Howsam*, 537 U.S. at 84 (internal quotations omitted).  For example, the Supreme Court held

15   that whether arbitration of a dispute between a brokerage firm and its customer was time barred

16   under the National Association of Securities Dealers Code of Arbitration Procedure was a matter

17   presumptively for the arbitrator, not for the judge.  *Id*. at 85.  The Court also held that an

18   arbitrator should decide allegations of waiver, delay, or a similar defense to arbitrability.  *Id*. at

19   84; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

20        Applying this precedent, the First Circuit concluded a dispute between the parties

21   regarding where an arbitration will take place "raises not a question of arbitrability but a

22   procedural question and is therefore for the arbitrator, not the Court."  *Richard C. Young & Co.*

23   *v. Leventhal*, 389 F.3d 1, 4 (1st Cir. 2004).  In that case, the arbitration agreement provided, "any

24   disagreement between [the parties] in connection with" the arbitration agreement "will be

25   submitted to arbitration."  *Id*.  The appellate court found that disagreement over interpretation of

26   the forum selection clause is one "in connection with" the arbitration agreement, and thus was an

27   issue the parties agreed to submit to arbitration.  *Id*.

28   ///

1    The license agreements between Plaintiffs and KWRI state, "any claim, controversy or

2    dispute arising out of or relating to licensee's operation of the market center under this

3    agreement . . . shall . . . be referred to arbitration in accordance with the rules of arbitration of

4    the American Arbitration Association, as amended."[17]  The "arising out of and relating to"

5    language renders the arbitration clause broad, encompassing questions regarding venue. *See*

6    *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983); *Bosinger*, 57

7    F. Supp. 2d at 993.

8        In addition, the parties' agreement to arbitrate in accordance with AAA rules is

9    significant. *Cf. P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867 (10th Cir. 1999) (holding

10   that a party who consents to arbitration before the AAA also consents to be bound by AAA's

11   procedural rules unless the party indicates otherwise); *Rainwater v. Nat'l Home Ins. Co.*, 944

12   F.2d 190, 192-93 (4th Cir. 1991) (same).  AAA's Commercial Arbitration Rules[18] state that the

13   arbitrator decides venue when the issue is in dispute:

14       The parties may mutually agree on the locale where the arbitration is to be held.  If
         any party requests that the hearing be held in a specific locale and the other party
15       files no objection thereto within 15 days after notice of the request has been sent to
         it by the AAA, the locale shall be the one requested.  If a party objects to the locale
16       requested by the other party, the AAA shall have the power to determine the
         locale, and its decision shall be final and binding.
17

18   AAA Commercial Arbitration Rules R-10.

19       Applicable authority and the AAA's procedural rules mandate the conclusion this Court

20   does not have jurisdiction to interpret the license agreements' forum selection clause, and instead

21   the issue must be decided by the arbitrator.  Similarly, the Court finds the dispute between the

22   parties regarding which substantive law applies to Plaintiffs' claims is a procedural matter to be

23   decided by the arbitrator.  *See ATSA of Cal., Inc. v. Continental Ins. Co.*, 702 F.2d 172, 175 (9th

24   Cir. 1983) ("[T]he arbitrator has authority to determine the applicable law."); *Chloe Z Fishing*

25   _____

26   [17]  FAC Ex. A ¶ 20.02(a); FAC Ex. B ¶ 20.02(a).

27   [18]  AAA's Commercial Arbitration Rules apply whenever the parties agree to arbitration
     by AAA under its Commercial Arbitration Rules, and also when they agree to arbitration by the
28   AAA of "a domestic commercial dispute without specifying particular rules."  AAA Commercial
     Arbitration Rules R-1.

1    *Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1253 (S.D. Cal. 2000) (same); *In the*

2    *Matter of Arbitration Between Zurich Ins. Co. v. Ennia Gen. Ins. Co.*, 882 F. Supp. 1438, 1440

3    (S.D.N.Y. 1995) ("[T]he issue of law to be applied in the arbitration proceeding — including the

4    question whether the choice of law clause in the Management Agreement applies — is for the

5    arbitration panel.").

6        Having found the parties agree Plaintiffs' claims against KWRI are arbitrable and the

7    arbitrator must interpret the license agreements' choice of law and forum selection clauses, the

8    remaining task for the Court is to compel arbitration.  Section 4 of the FAA states that the court

9    "shall make an order directing the parties to proceed to arbitration in accordance with the terms

10    of the agreement.  The hearing and proceedings, under such agreement, shall be *within the*

11    *district in which the petition* for an order directing such arbitration is filed." 9 U.S.C. § 4

12    (emphasis added).  By its terms, § 4 "confines the arbitration to the district in which the petition

13    to compel is filed." *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001)

14    (emphasis omitted).  Accordingly, the FAA requires this Court to order Plaintiffs' claims against

15    KWRI to be submitted for arbitration with the AAA in the Southern District of California.

16    However, this order does not preclude KWRI from challenging venue before the AAA, nor does

17    the Court express any opinion as to whether the arbitration of Plaintiffs' claims against KWRI

18    should be consolidated with the arbitration proceedings in Texas, as that is a procedural matter

19    left to the arbitrator. *See Green Tree*, 539 U.S. at 450-54 (holding that the arbitrator, not court,

20    determines whether an arbitration clause permits classwide arbitration); *Shaw's Supermarkets,*

21    *Inc. v. United Food & Commercial Workers Union*, 321 F.3d 251, 254 (1st Cir. 2003) (holding

22    that whether grievances should be consolidated was a matter for the arbitrator); *Weyerhauser Co.*

23    *v. Western Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir. 1984) (holding federal court lacks

24    power to order consolidation without the parties' consent, even when the separate arbitrations

25    involve the same questions of fact and law); H. Warren Knight, *California Practice Guide:*

26    *Alternative Dispute Resolution* § 5:361 at 5-181 (The Rutter Group 2004) (stating that arbitrator

27    should decide whether arbitration clause allows consolidation of separate arbitration

28    proceedings).

**III.   Colwell's Motion to Dismiss, for More Definite Statement, and for a Stay**

Colwell moves to dismiss the FAC, arguing the causes of action against him are time-barred, the FAC fails to state a claim upon which relief can be granted, and BLT I and BLT II lack capacity to sue.  He contends this action should be stayed if this Court orders arbitration of the claims between Plaintiffs and KWRI.  In the alternative, Colwell moves for an order requiring a more definite statement.

The two causes of action alleged against Colwell — unfair business practices and intentional interference with prospective business advantage — are levied against both Colwell and KWRI.[19]  As discussed above, Plaintiffs and KWRI agree these claims must be arbitrated. The Ninth Circuit has recognized a court may

> "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court."

*Mediterranean Enters.*, 708 F.2d at 1465 (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)).  In this case, there is a significant overlap between the arbitrable and the nonarbitrable claims, as the causes of action asserted against Colwell are also alleged against KWRI.  Whether Colwell can be liable to the Plaintiffs will be influenced by the outcome of Plaintiffs' case as to KWRI.  This Court thus cannot rule on Colwell's challenges to the merits of the claims asserted against him, nor on Colwell's argument regarding BLT I and BLT II's capacity to sue, without creating a risk of inconsistent rulings with the arbitrator and running afoul of the strong federal policy favoring arbitration.  Accordingly, Colwell's motion to stay is **GRANTED**, and his motions to dismiss and for more definite statement are **DENIED WITHOUT PREJUDICE**.

///

///

///

---

[19] *See* FAC ¶¶ 53-64.

## CONCLUSION

Having reviewed the parties' briefs, applicable law, and good cause appearing, **IT IS HEREBY ORDERED**:

1. Colwell's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED** [dock. no 29-1].

2. Colwell's Motion to Dismiss for Failure to State a Claim and alternative Motion for More Definite Statement are **DENIED WITHOUT PREJUDICE** [dock. no 29-1, 29-2].

3. Colwell's Motion to Stay Proceedings is **GRANTED** [dock. no. 29-3]

4. KWRI's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **DENIED** [dock. no. 37-1].

5. KWRI's Motion to Stay this Action and Compel Arbitration is **GRANTED** [dock. no. 37-2, 37-3, 37-4]. Plaintiffs' claims against KWRI shall be submitted to arbitration with the AAA in the Southern District of California.

6. Plaintiffs' claims against Colwell are not arbitrable. Further, as the arbitration of Plaintiffs' claims against KWRI will likely impact Colwell's liability to Plaintiff, the Court **STAYS** this civil action pending final resolution of the arbitration proceedings. Because this Court may not proceed with this case in the normal course, and in the interest of judicial efficiency, the Court finds this civil case should be administratively closed until the completion of the arbitration proceedings. Upon proper application by a party, the Court may reopen this civil case.

The Clerk of the Court is directed to administratively close this case and submit a JS-6 form to the Administrative Office.

**IT IS SO ORDERED.**

Dated: 3/17/06

M. JAMES LORENZ
UNITED STATES DISTRICT JUDGE

COPY TO:

HON. JAN M. ADLER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

11                                                                          05cv1697